Remsburg v. Docusearch, Inc.          CV-00-211-B    04/04/02
                    UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE


Helen Remsburg, Administrator
of the Estate of Amy Lynn Boyer

     v.                                  Civil No. 00-211-B
                                         Opinion No. 2002 DNH 080
Docusearch, Inc., et al.


                      MEMORANDUM AND ORDER


     On October 15, 1999, Liam Youens fatally shot Amy Lynn Boyer

as she left work.  Plaintiff Helen Remsburg, administrator of

Boyer's estate, has sued defendants Docusearch, Inc.

("Docusearch"); Wing and a Prayer, Inc.; Daniel Cohn; Kenneth

Zeiss; and Michele Gambino for providing Youens with Boyer's

social security number ("SSN") and work address prior to the

shooting.  By separate memoranda and orders, I have denied the

corporate defendants' motion to dismiss for lack of personal

jurisdiction and proposed to certify several unresolved issues of

state law raised by defendants' motions for summary judgment to

the New Hampshire Supreme Court.  Because I have set forth the

background of this case in those memoranda and orders, I shall assume familiarity with the facts and focus on matters germane to defendants' motions for summary judgment challenging Remsburg's claim under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a et seq.[1]

Defendants concede that, in response to Youens' July 30, 1999 request that defendant Docusearch provide him with Boyer's SSN, Docusearch obtained the SSN from Information Resource Service Company ("IRSC"), a reporting agency that offers, inter alia, credit reports. Defendants assert, without contradiction from Remsburg, that Docusearch did not procure a full credit report from IRSC, but "may have received a so-called 'credit header' that listed Boyer's name, address, SSN, and telephone number." Docusearch Defendants' Motion for Summary Judgment, at 2, ¶ 7. On August 2, 1999, Docusearch sold Youens Boyer's SSN. On September 6, 1999, Youens used Boyer's SSN to place an order with Docusearch for Boyer's work address. On September 8, 1999, Docusearch sold Youens Boyer's work address, which defendant

_____

[1] The "Docusearch defendants" – Docusearch, Wing and a Prayer, Inc., and Daniel Cohn – have filed the motion, but all defendants other than Michele Gambino join in it.

Gambino, Docusearch's agent, obtained by means of a "pretext" telephone call to Boyer. Just over five weeks later, Youens killed Boyer as she left work.

In her amended complaint, Remsburg asserts that Docusearch's procurement of Boyer's credit header and subsequent sale to Youens of Boyer's SSN and work address violated the FCRA in two respects. Remsburg's first theory assumes that Docusearch provided Youens with a "consumer report," 15 U.S.C. § 1681a(d) (defining "consumer report"), or an "investigative consumer report," 15 U.S.C. § 1681a(e) (defining "investigative consumer report"). Under this theory, Docusearch ran afoul of the FCRA by preparing an investigative consumer report concerning Boyer without providing her notice that it was doing so, see 15 U.S.C. § 1681d(a) (requiring notice to the subject of such a report); providing Youens with a consumer report and/or an investigative consumer report for an impermissible purpose, see 15 U.S.C. § 1681b(a) (specifying the permissible uses of consumer reports); and failing to maintain adequate procedural safeguards to avoid the unlawful dissemination of such reports, see 15 U.S.C. § 1681e(a) (requiring reasonable procedures to ensure compliance with § 1681b).

-3-

Remsburg's second theory assumes that Docusearch procured a consumer report from IRSC. Under this theory, Docusearch violated the FCRA by procuring such a report for resale of information contained within the report without identifying to IRSC the end user and the permissible purpose under § 1681b for which the report was to be furnished, 15 U.S.C. § 1681e(e)(1) (requiring such identification by procurer for resale); and without maintaining reasonable procedures to avoid the unlawful dissemination of information in consumer reports, see 15 U.S.C. § 1681e(e)(2) (requiring reasonable procedures to ensure compliance with § 1681b).

Defendants have moved for summary judgment on both of Remsburg's FCRA theories. With respect to the first theory, defendants contend that, as a matter of law, the information that they furnished to Youens was not a consumer report (or, by extension, an investigative consumer report). With respect to the second theory, defendants contend that, as a matter of law, the information they obtained from IRSC was not a consumer report. Both arguments are persuasive.

The FCRA defines a "consumer report" as

> any written, oral, or other communication of
> any information by a consumer reporting
> agency bearing on a consumer's credit
> worthiness, credit standing, credit capacity,
> character, general reputation, personal
> characteristics, or mode of living <u>which is
> used or expected to be used or collected in
> whole or in part for the purpose of serving
> as a factor in establishing the consumer's
> eligibility for-</u>
>
> <u>(A) credit or insurance to be used primarily
> for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under
> section 1681b of this title.</u>

15 U.S.C. § 1681(a)(d)(1) (emphasis supplied).[2] Pointing to the

highlighted language, defendants contend that there is no

evidence that they collected, used, or expected the information

provided to Youens to be used for any of the purposes specified

---

[2] An "investigative consumer report" is a

> consumer report or portion thereof in which information
> on a consumer's character, general reputation, personal
> characteristics, or mode of living is obtained through
> personal interviews with neighbors, friends, or
> associates of the consumer reported on or with others
> with whom [s]he is acquainted or who may have knowledge
> concerning any such items of information.

15 U.S.C. § 1681(e).

-5-

in subsections (A) through (C).  Plaintiff makes no response to this argument, and no basis for a counter-argument is evident in the record.  Therefore, Remsburg's first FCRA theory is not viable.

Remsburg's second FCRA theory is also flawed.  As defendants point out, until July 1, 2001, when the Gramm Leach Bliley Act of 1999 ("GLB Act"), Pub. L. 106-102, Nov. 12, 1999, became fully effective, the prevailing view was that the sale of credit header data[3] was not limited by statute or regulation.  See International Reference Servs. Group, 145 F. Supp.2d at 17-22 (detailing the legislative and regulatory history of the GLB Act and noting (at page 20) that, prior to the full implementation of the GLB Act's regulations in 2001, the Federal Trade Commission took the position that credit header data "was not subject to the FCRA because it 'does not bear on the creditworthiness, credit capacity, credit standing, character, general reputation,

_____

[3]  A credit header includes the names, addresses, SSNs, and telephone numbers of consumers and is typically printed at the top of credit reports.  See Individual Reference Services Group v. FTC, 145 F. Supp.2d 6, 14 (D.D.C. 2001) (citing the sworn statement of the credit reporting agency involved in that litigation).

personal characteristics, or mode of living, unless such terms are given an impermissibly broad reading'") (quoting <u>In the Matter of Trans Union Corp.</u>, 2000 WL 257766, FTC Commission Opinion No. 9255, slip op. at 30 (Feb. 10, 2000), <u>petition</u> <u>for</u> <u>review</u> <u>denied</u>, 245 F.3d 809 (D.C. Cir. 2001)). Because the transactions at issue occurred well prior to July 1, 2001, defendants argue that they could not have violated the FCRA by obtaining and researching Boyer's credit header information. Again, Remsburg does not present a developed response to this argument,[4] and no counter-argument is evident in the record or the case law. Remsburg's alternative FCRA theory therefore also lacks merit.

For the reasons stated, I grant the Docusearch Defendants' Motion for Summary Judgment (document no. 60) insofar as it pertains to Remsburg's FCRA claim.[5]

---

[4] Remsburg states, without elaboration, that "[t]o the extent that [Boyer's SSN] was obtained from a pre-existing 'credit header,' the resale of this information must comply with the FCRA." Plaintiff's Objection to Docusearch Defendants' Motion for Summary Judgment, at 30. But the two cases cited in support of this pronouncement (both of which involved consumer reports) stated or implied nothing of the sort.

[5] In its objection to defendants' motion, Remsburg advances a third theory to support her FCRA claim: that Docusearch

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


April 4, 2002

cc:  David M. Gottesman, Esq.
     Dona Feeney, Esq.
     Carol L. Hess, Esq.
     Michael J. Iacopino, Esq.
     Steven B. Ross, Esq.

_____

violated the FCRA by obtaining Boyer's SSN from IRSC under false pretenses. See 15 U.S.C. §§ 1681q (making it a federal offense to willfully obtain information on a consumer from a consumer reporting agency under false pretenses) and 1681n (creating a private right of action for consumers victimized by violations of § 1681q). Specifically, Remsburg posits that Docusearch violated its subscriber agreement with IRSC because it "agreed to limit its requests to IRSC to those clients with permissible purposes." Plaintiff's Objection to Docusearch Defendants' Motion for Summary Judgment, at 28. Remsburg has not, however, explained why information not governed by the FCRA would have been treated by contract as though it were. Nor has she provided me with a full copy of the subscriber agreement, or even a citation to the provision(s) Docusearch allegedly violated. I therefore decline to deny defendants' motion on the basis of this newly raised theory.

-8-